USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-18-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANUEL MOSES as Administrator D.B.N. of the
Goods, Chattels, and Credits Which Were of Zoran
Teodorovic Deceased,

        Plaintiff,

- against -

WESTCHESTER COUNTY DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.

REPORT AND
RECOMMENDATION

10 Civ. 9468 (GBD) (RLE)

To the HONORABLE GEORGE B. DANIELS, U.S.D.J.:

## I. INTRODUCTION

On December 21, 2010, Plaintiff Manuel Moses, in his capacity as executor of the estate of Zoran Teodorovic, filed the instant Complaint against Westchester County, the Westchester County Department of Corrections, and Paul M. Cote, alleging violations of the deceased's constitutional rights pursuant to 42 U.S.C. § 1983. Before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to file the action within the statute of limitations and failure to fulfill state law notice of claim requirements. For the reasons stated below, I recommend that Defendants' motion be **DENIED** with respect to Plaintiff's claims under section 1983, and **GRANTED** with respect to Plaintiff's state law claims.

## II. BACKGROUND

### A. Factual Background

#### 1. The Incident

This case concerns an extraordinary set of facts. In October 2000, Zoran Teodorovic, a forty-six year old homeless man of Serbian origin with a history of mental illness, was arrested

for trespass. (Compl. ¶ 39.) Teodorovic was unable to pay the bail set in his case, and was detained in the Westchester County Jail to await trial. (*Id.*) While incarcerated, Teodorovic was asked to leave his cell so that it could be cleaned. *United States v. Cote*, 06 Cr. 0121, 2007 WL 1000849 at *6 (April 3, 2007)(Compl. Ex. 4). Once the cell had been cleaned, Teodorovic ignored corrections officer John Reimer's instructions to return to the cell, and struck Reimer when Reimer approached him. *Id.* Reimer had wrestled Teodorovic to the ground when a fellow corrections officer, Defendant Cote, came to Reimer's aid. (Compl. ¶ 40.) Cote began kicking Teodorovic and stomping on his head, causing injuries requiring hospitalization. (*Id.* ¶¶ 40-41.) Teodorovic was hospitalized for fourteen months before dying of the injuries incurred in the incident. (*Id.* ¶ 41.)

### 2. Investigations and Prosecutions Relating to the Incident

Cote was indicted in Westchester County for assault in November 2000. *Cote*, 2007 WL 10000849, at *3. Around the same time, the Federal Bureau of Investigations opened an investigation into allegations that Cote had used excessive force against Teodorovic. *Id.* Cote was tried by a jury in state court, and, on July 13, 2001, was acquitted of intentional assault but convicted of reckless assault. *Id.* He was sentenced to, and served, three months' imprisonment and 100 hours of community service. *Id.*

In May 2002, Cote's attorney learned of the federal investigation into the incident, and initiated negotiations with the United States Attorney's office. *Id.* The federal investigation continued until October 3, 2005, when the Justice Department determined that an indictment should be sought. *Id.* at *4. At this point, the statute of limitations had almost been exhausted, but Cote agreed to a toll of the statute of limitations in exchange for a promise that he would not be prosecuted for Teodorovic's death. *Id.* On September 20, 2006, Cote was convicted by a

federal jury of a violation of 18 U.S.C. § 242, the criminal counterpart of section 1983, *id.* at *1, but his conviction was overturned by the presiding judge, District Judge Charles Brieant. *See generally id.* On September 28, 2008, the Second Circuit reversed Judge Brieant's decision and upheld Cote's conviction. *United States v. Cote*, 544 F.3d 88 (2d Cir. 2008).

Teodorovic's death also sparked a federal investigation into conditions at the Westchester County Jail (Compl. ¶ 30), a report of which was completed and released in November 2009. (Compl., Ex. 6.) Investigators found a number of instances of use of excessive force by jail staff, a failure to provide an adequate review system, and a failure to provide adequate mental and medical health care. (*Id.*)

**B. Procedural Background**

Teodorovic's father, George Bentley, had lived in the United States but had died several years before the incident occurred. (Compl. ¶ 18.) His mother, Rajna Teodorovic ("Rajna"), lived in Sweden and had lost contact with her son. (*Id.*) From the beginning of the FBI investigation, agents had been trying to locate Teodorovic's next of kin. (Compl., Ex. 2.) It was not until early 2006 that the FBI was able to locate Joseph Mariah, an attorney who had been appointed to be Teodorovic's legal guardian. (*Id.*) Mariah told the FBI that in 2004 he had received a letter from Mirka Furst, Teodorovic's sister, but had not followed up because he had closed his case file on Teodorovic following Teodorovic's death. (*Id.*) The FBI contacted Furst in Serbia, learned that Rajna and Teodorovic's other siblings were living in Sweden, and initiated contact with them. (*Id.*)

Upon learning of Teodorovic's death and the circumstances surrounding it, Teodorovic's family began to explore their legal options. They initially located an attorney who tried unsuccessfully to file a late notice of claim in state court. (Compl., Ex. 3.) The family then found

Moses, and went through a lengthy process of petitioning to appoint him administrator of Teodorovic's estate. (Compl. ¶ 18.) The instant suit was filed as soon as Moses had been appointed. (*Id.*)

### III. DISCUSSION

#### A. Motion to Dismiss Standard

In deciding a motion to dismiss under Rule 12(b)(6), the court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In addition, under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the court must also apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original); *see Elektra Entertainment Group, Inc. v. Santangelo*, 2008 WL 4452393, at *2 (S.D.N.Y. Oct 1, 2008). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" to defeat a motion to dismiss. *Twombly*, 550 U.S. at 570; *see Johnson & Johnson v. Guidant Corp.*, 2007 WL 2456625, at *4 (S.D.N.Y. Aug. 29, 2007)).

#### B. The Allegations in the Complaint Support the Availability of Equitable Tolling of the Statute of Limitations

Federal courts deciding section 1983 claims apply the statute of limitations for personal injury actions of the state in which they sit. *Wilson v. Garcia*, 471 U.S. 261 (1985). In New York, that statute of limitations is three years. *See Owens v. Okure*, 488 U.S. 235, 251 (1989). Moses recognizes that the three-year statute of limitations began to run from the date of the incident, October 10, 2000, such that the December 21, 2010 filing of this case was untimely. He

4

argues, however, that the Court should apply the doctrine of equitable tolling to allow the case to proceed. Defendants counter that, under New York law, equitable tolling is only available when some fraud on the part of the defendant prevented the plaintiff from filing a timely action. (Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 4-6.)

### 1. Extraordinary Circumstances Justify Equitable Tolling in this Case

Defendants are correct in their assertion that "[u]nder New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action." *Abbas v. Dixon, et al.*, 480 F.3d 636, 642 (2d Cir. 2007) (citing *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794 (N.Y. App. Div. 2005)). Defendants are incorrect, however, in asserting that these are the only circumstances in which equitable tolling may be permitted. Federal courts deciding section 1983 actions generally apply the tolling provisions of the state in which the action is brought, *see Wallace v. Kato*, 549 U.S. 384 (2007), unless doing so would be contrary to the federal policy goals of "compensation of persons injured by a deprivation of federal rights and the prevention of abuses of power by those acting under color of state law" underlying section 1983. *Singleton v. City of New York*, 632 F.2d 185, 189-91 (2d Cir. 1980). In order to enforce these goals, courts in this Circuit deciding section 1983 claims have applied the federal equitable tolling standard, which allows tolling where "extraordinary circumstances prevented a party from timely performing a required act." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir.2004)) (internal quotation marks omitted); *see, e.g., Hargroves v. City of New York*, 694 F. Supp. 2d 198, 211-13 (E.D.N.Y. 2010), *rev'd on other grounds, Hargroves v. City of New York*, 2011 WL 605816 (2d Cir. Feb. 22, 2011).

5

The Court's research can find no case in this Circuit that provides an analogy to the perfect storm of this case: a claim-holder who is a mentally-ill, homeless, incarcerated immigrant beaten into a coma, and subsequently dies, with estranged next-of-kin living in a foreign country. Law in this state and this Circuit does, however, address whether certain aspects of the facts of this case constitute extraordinary circumstances that justify tolling. Death of a tort victim is recognized by New York law as a circumstance in which tolling is appropriate. NY CPLR § 210(a). Mental impairment can also create grounds for a toll under both federal and New York law. *See Mulero v. Bridgeport Bd. of Educ.*, No. 3:07-CV-1206, 2008 WL 2185928, at *3-*4 (D. Conn. May 22, 2008); NY CPLR §208. Finally, while lack of knowledge of the English language and unfamiliarity with the court system do not on their own justify a toll, *Huang v. United States*, No. 03 Civ. 3755, 2003 WL 22272584, at *2-*3 (S.D.N.Y. Oct. 02, 2003) (collecting cases), considered in the totality of the circumstances surrounding this case, Rajna's distance from the events giving rise to the cause, lack of English comprehension, and lack of knowledge of both the facts and law of the case are all factors that the Court considers in determining that equitable tolling is appropriate. *See, e.g., Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963, 971 (E.D.N.Y. 1995) (equitable tolling applies where "the plaintiff knows he has been injured but cannot in the exercise of due diligence discover information critical to his claim.")

The uniqueness of the present case is that the combination of relevant tolling factors creates a situation in which the aims of the statute support not only the application of equitable tolling, but for an extended period of time. Thus, while the CPLR provides for only a one-year tolling in the case of death, the deceased here was mentally ill when his claim arose and mentally incapacitated from the time of injury until his death. The combination of these factors with the

6

difficulties his mother faced in securing competent representation and navigating a foreign legal system justify equitable tolling. Plaintiffs in the circumstances of Zoran and Rajna Teodorovic, where the transfer of knowledge was impeded by mental disease, death, distance, and language, cannot simply commence an action within three years, and therefore are entitled to a toll of the statute of limitations. Deciding this issue otherwise might give those acting under color of state law a sense that they can act with impunity against those who are foreign-born, mentally ill, or homeless.

### 2. Plaintiffs Exercised Reasonable Diligence

Defendants argue that even if extraordinary circumstances justify equitable tolling, Moses has not made an adequate showing that he and the Teodorovic family acted with "reasonable diligence" throughout the time sought to be tolled. *Walker*, 430 F.3d at 564 (quoting *Doe*, 391 F.3d at 159.) Although the Court has been presented with incomplete evidence as to the actions taken by the Teodorovic family throughout the ten years between the incident and the filing of the instant claim, the facts do show that Plaintiffs were reasonably diligent for a sufficient amount of time to make the filing timely.

#### a. October 20, 2000 - December 2001

From the day of the incident until Teodorovic's actual death, he, and not his estate, was the holder of the cause of action in this matter. Teodorovic was in a coma for these fourteen months, however, and as discussed above, such a mental incapacity provides a toll under both statutory and case law, such that this period should be tolled.

#### b. December 2001 - May 2006

The facts asserted in the Complaint show that even before learning of the incident in the Westchester Jail, Teodorovic's family was attempting to find out what had happened to him.

(Compl., Ex. 2.) Rajna, who, as Teodorovic's sole distributee, inherited Teodorovic's claim, did not learn of exactly what had happened to her son until May of 2006. Up until that point she was not aware of the factual basis for her claim, which provides a basis for equitable tolling. *See, e.g., United States v. Kubrick*, 444 U.S. 111, 122 (1979). Thus equitable tolling should be available up until the point of Rajna's learning the details of the incident.

### c. May 2006 - April 2007

Once she learned of the incident from the FBI, Rajna immediately began to engage the legal process. She obtained an attorney, Brian Kelly, and secured letters of administration so that Kelly and Furst could bring Teodorovic's claims. (*See* Compl., Ex. 1.) Kelly then undertook to preserve Teodorovic's claims by attempting to file a late notice of claim. (*See* Compl., Ex. 3.) In his filing, Kelly did assert that the estate had a section 1983 claim. That request was denied on April 17, 2007. (*Id.*) Because Plaintiffs raised the precise statutory claims at issue here, but did so in the wrong forum, the time that the late notice of claim was being adjudicated should also be tolled. *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 109 (2d Cir. 1978).

### d. April 2007 - May 2009

The evidence indicates that once their request to file a late notice of claim was denied, Teodorovic's family were under the impression that they had no other legal recourse. (Decl. of Manuel Moses ("Moses Decl.") ¶ 10.) It was not until after Cote's conviction was upheld by the Second Circuit, on May 18, 2009, that they began to hope that they might have some other means of seeking redress. (*Id.*) While courts have generally denied equitable tolling to plaintiffs who were aware of the facts of their injury but ignorant or mistaken as to the availability of a legal claim, *see Kubrick*, 444 U.S. at 123-24, in such cases the plaintiffs have typically done nothing to investigate or otherwise pursue their claim throughout the statutory period. *See, e.g.,*

8

*id.*; *Jones v. United States*, 366 Fed. App'x 436, 440 (3d Cir. 2010); *Pafe v. Holder*, 615 F.3d 967, 969 (8th Cir. 2010). Here, there is evidence that Teodorovic's family continued to seek legal advice and a way to prosecute their claim throughout this period, consulting at least one other attorney before finding Moses. (Moses Decl. ¶ 10.) In *Santos v. United States*, 559 F.3d 189 (3d Cir. 2009), the Third Circuit found that equitable tolling was available where the plaintiff was only six years old when her claim arose and plaintiff and her attorney attempted diligently to prosecute the case despite being mistaken about the law. There are similar circumstances in this case, where distance and language barriers provide obstacles to attorney-client communication and the client's ability to supervise the attorney in much the same way as Santos's youth. As in that case, denying tolling in these circumstances would be, "a result likely to prejudice the weakest and most vulnerable members of our society who surely are compelled to rely on others for the assertion of their rights." *Id.* at 204. Thus the period from April 2007 to May 2009 should also be tolled.

e. May 2009 - December 2010

Upon locating Moses, Plaintiffs were required to go through a long process of revoking Furst and Kelly's letters of administration and appointing Moses as administrator, a process that was necessarily complicated by the distances and language difficulties involved in the case. (*See* Compl., Ex. 1.) Moses was not granted letters of administration until December 14, 2010. Because obtaining appointment as the estate's administrator was essentially a prerequisite to Moses pursuing this claim, the time period required to obtain this appointment (from May 2009 - December 2010) should also be tolled. *Compare, e.g., Wall v. Construction & General Laborers' Union, Local 230*, 224 F.3d 168, 177 (2d Cir. 2000) (Period of time to bring federal labor management suit tolled while plaintiffs exhausted union remedies) *with Day v. Moscow*,

9

955 F.2d 807, 813 (2d Cir. 1992) (filing of administrative action did not toll statute of limitations where administrative action was not a prerequisite to filing of federal claim).

"The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland v. Florida*, 560 U.S. __, 130 S.Ct. 2549, 2565 (2010). The Court finds that the Teodorovic family and their representatives exercised reasonable diligence given the difficulties and delays inherent in attempting to find and coordinate effective legal representation across three countries and in multiple languages. As a result, Defendants' motion to dismiss Moses's section 1983 claims on statute of limitations grounds should be **DENIED**.

### C. Moses's State Law Claims Are Barred for Failure to File a Timely Notice of Claim

Defendants assert that any state law claims brought by Moses are barred under New York General Municipal Law §§ 50-e and 50-I, which "require that a plaintiff asserting a state law tort claim against a municipal entity or its employees acting within the scope of their employment must (i) file a notice of claim within ninety days after the incident giving rise to the claim, and (ii) commence the action within a year and ninety days from the date on which the cause of action accrues." *Marshall v. Downey*, No. 09-CV-1764, 2010 WL 5464270, at *7 (E.D.N.Y. Dec. 27, 2010). As noted above, Rajna, represented by other counsel, had been denied a 2006 application to file a late notice of claim. (Compl., Ex. 3.) Moses now argues that Fed. R. Civ. P. 60, which permits a court to correct mistakes in judgments and orders and provide relief from final judgments in certain circumstances, allows this Court to overturn the denial of the 2006 application. (Mem. in Supp. of Opp'n at 9-11.) Moses does not, however, cite any authority that suggests that Fed. R. Civ. P. 60 can be used to overturn a valid state court judgment, and the Court can find no authority to support such a proposition. Therefore, to the extent that Moses

exerts state law claims against Defendants,[1] Defendants' motion to dismiss should be **GRANTED**, and those claims should be **DISMISSED**.

## IV. CONCLUSION

For the reasons set forth above, I recommend that Defendants' motion to dismiss be **DENIED** as to Moses's section 1983 claims and **GRANTED** as to Moses's state law claims.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 630, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

Dated: July 18, 2011
New York, New York

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

---

[1] The Complaint makes reference to this Court's supplemental jurisdiction over state law claims (¶ 6), but does not enumerate any specific state law causes of action.

**Copies of this Report and Recommendation were sent to:**

<u>*Pro Se* Plaintiff</u>
Manuel Moses, Esq
236 West 26th Street Suite 303
New York, NY 10001

<u>Counsel for Defendants</u>
Jane Hogan Felix
Westchester County Attorney's Office
148 Martine Avenue, Room 600
White Plains, NY 10601

12